# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 25, 2010 Session

## JOSHUA CORDELL PAYNE v. KYNDRA LORAN PAYNE

**Appeal from the General Sessions Court for Fentress County**
**No. 9562      Michael Todd Burnett, Judge**

**No. M2009-02019-COA-R3-CV - Filed June 10, 2011**

Father appeals the trial court's order granting Mother's petition that she be named the primary residential parent of their one child. Father was named the primary residential parent when the parties were divorced, and Mother was granted liberal parenting time with the child. Father filed three separate petitions during the following three years seeking to modify and limit Mother's time with the child. However, Father was unable to prove any of his allegations against Mother, leading the court to deny each of his petitions. In response to his final petition to modify, Mother filed a counter petition asking to be named the primary residential parent. The trial court granted Mother's petition, finding that Father's petitions seeking to limit Mother's time with the child and his failure to investigate the allegations in his petitions intentionally interfered in the child's relationship with her mother, constituting a material change in circumstances unanticipated at the time the permanent parenting plan was established. Father contends the trial court was precluded by *res judicata* and collateral estoppel from finding his earlier petitions were frivolous and filed without adequate investigation, and that the court erred in relying on these findings to change the primary residential parent from Father to Mother. We affirm the trial court's judgment and grant Mother her attorney's fees incurred at trial and this appeal. We remand this case to the trial court to determine Mother's reasonable attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed in Part, Reversed in Part, and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Michael Savage, Livingston, Tennessee, for the appellant, Joshua Cordell Payne.

Melanie Stepp Lane, Jamestown, Tennessee, for the appellee, Kyndra Loran Payne.

# OPINION

Kyndra Loran Payne ("Mother") and Joshua Cordell Payne ("Father") were married and had a child in 2003. They were divorced in October 2005, Father was named the primary residential parent, and Mother was granted residential time with the child. Father filed various petitions starting in 2006 asking for Mother's time with the child to be reduced based on allegations of improper conduct that Father ultimately was unable to prove. In November 2008 Mother filed a counter petition in response to Father's third petition in which she asked to be named the primary residential parent. Following a hearing, the trial court granted Mother's petition and named her the primary residential parent. Father appealed that order to this Court. For the reasons stated below, we affirm the trial court's judgment.

## I. BACKGROUND

Father filed a complaint for divorce in May 2005, when the child was two years old. Mother and Father agreed to a Temporary Parenting Plan in which both parents had equal time with their child. The trial court held a hearing in October 2005 and entered an Order of Divorce in which Father was named the primary residential parent, with Mother to have the child Tuesdays, Thursdays, and every other weekend. Decisions regarding the child's education, health care, religious upbringing and extracurricular activities were to be made jointly. The Order of Divorce was entered in March 2006, *nunc pro tunc* October 20, 2005.

Father filed his first Petition for Modification of Residential Parenting and Petition for Emergency Custody on March 20, 2006. The grounds for this petition were that Mother allegedly was engaged in sexual activities with men to whom she was not married and that one of Mother's male friends may have touched the child inappropriately. The trial court held an *ex parte* hearing on March 20, 2006, and entered a restraining order against Mother pending a full and final hearing on Father's allegations. Mother filed an Answer to Father's petition denying Father's allegations. The trial court held a hearing on March 30 and dismissed the restraining order against Mother. The trial court found no evidence of wrongdoing by Mother (or her male friend) and restored the parenting arrangement to the terms set out in the parenting plan attached to the Order of Divorce.

Father filed a second Petition for Modification of Residential Parenting, Parenting Time, and Petition for Emergency Restraining Order on September 21, 2006. The basis for this petition was Father's allegation that Mother was using illegal drugs, as well as the earlier allegation of improper touching by one of Mother's male friends. The trial court held an *ex parte* hearing on October 5, 2006, and entered a restraining order against Mother, enjoining her from further parenting time with the child unless supervised, pending a full and final hearing. The court held a hearing on October 24 and found that Father had failed to carry

his burden of proof to show any wrongdoing by Mother. The court ordered both Mother and Father to undergo drug testing and ordered the prior parenting plan to be reinstated, except that Mother's parenting time was to be supervised by her mother or grandmother pending the outcome of the drug tests.

Father filed a third Petition to Modify Residential Parenting on September 12, 2008. The basis of this petition was Father's fear Mother would remove the child from the school she was enrolled in and place her in a school closer to Mother's home. Mother answered the petition denying Father's allegations. Mother also filed a Counter Complaint alleging a material change in circumstances warranting naming Mother the primary residential parent. The material changes in circumstances Mother identified included Father's failure to follow the parenting plan ordered by the trial court as well as interfering with Mother's relationship with the child.

The trial court held a hearing on August 13, 2009, and heard testimony from Mother, Father, Mother's mother, a woman who works with Mother's mother, and two teachers from the child's school. Following the hearing, the court found as follows:

> (1) The minor child . . . has been tardy to school a number of times while in the mother's care. This is a great concern to the Court and must be remedied.
>
> (2) The parents, Joshua Payne and Kyndra Payne, have failed to communicate with each other regarding school issues and other parenting issues.
>
> (3) The Petition to Modify the Permanent Parenting Plan filed by [Father] on September 29, 2008 is frivolous and the allegations of fact were not investigated nor do they constitute a material change in circumstances.
>
> (4) The allegations of fact made in previous petitions to modify the Permanent Parenting Plan, filed on March 20, 2006 and September 21, 2006, were made without necessary investigations.
>
> (5) [Father] assaulted Sue Sexton, [Mother's] mother, in Crossville on February 26, 2006.
>
> (6) These actions by [Father] constitute an intentional interference in the child's relationship with her mother and are a material change in circumstances unanticipated at the time the Permanent Parenting Plan was established.
>
> (7) Both parents have provided for the child's physical needs and have shown

affection for the minor child.

(8) The current Parenting Plan is not in the best interest of the minor child .
. . .

(9) It is in the minor child 's best interest that [Mother] be named Primary Residential Parent and that the current Permanent Parenting Plan be modified.

Based on these findings of fact, the court ordered as follows:

(1) [Mother] will be the Primary Residential Parent of the parties' minor child
. . . .

(2) [Mother] will ensure that the child . . . is at school on time every day.

(3) [Mother] will provide attendance records to her attorney, Melanie Lane, each month. Attorney Melanie Lane will forward these records to Attorney Lynda Simmons and to the Court for review.

(4) [Father] will notify [Mother] and [Mother] will notify [Father] via e-mail or U.S. Mail, of any concerns about the child including, but not limited to, school issues, medical or emotional problems, and behavioral problems. The parties will provide their mailing addresses and e-mail addresses to their respective counsel. Counsel will exchange these addresses and provide them to their clients.

(5) [Father] will pay child support in accordance with the Tennessee Child Support Guidelines.

(6) The Permanent Parenting Plan attached to this Order is hereby incorporated.

The Permanent Parenting Plan attached to the court's order dated September 4, 2009, granted Mother 249 days with the child and Father 116 days with the child. This was a change from the parenting plan attached to the Order of Divorce, which had granted Mother 168 days and Father 197 days.

## II. ISSUES ON APPEAL

Father appeals, raising several issues. First, Father argues the court's finding that

Father's petitions filed in March and September 2006 were made without necessary investigation was barred by the doctrines of *res judicata* and collateral estoppel. Second, Father argues the court's finding that the petitions filed in March and September 2006, were filed without necessary investigation is not supported by the facts, case law, or Tennessee Rules of Civil Procedure. Third, Father argues the court's finding that the petition filed in September 2008 was filed without necessary investigation is not supported by the facts, case law, or Tennessee Rules of Civil Procedure. Finally, Father argues the court's finding that Father assaulted Mother's mother in Crossville in February 2006 is barred by the doctrines of *res judicata*, collateral estoppel, and/or Tennessee Rule of Civil Procedure 13.01. Mother argues she should have been awarded her attorney's fees pursuant to Tenn. Code Ann. §36-5-103.

## III. ANALYSIS

### A. STANDARD OF REVIEW

We review the trial court's findings of fact *de novo* upon the record, according its findings a presumption of correctness unless the preponderance of the evidence is otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 569-70 (Tenn. 2002); Tenn. R. App. P. 13(d).

The most important consideration in making custody decisions is promoting the child's welfare by creating an environment that encourages a nurturing environment with both parents. *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006). As we have explained:

> Trial courts are vested with wide discretion in matters involving custody of children. Accordingly, a trial court's decision regarding custody or visitation should be set aside only when it falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.

*Curtis*, 215 S.W.3d at 839 (citing *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973) and *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001) (quotations omitted)).

Modifying a parenting plan to change the identity of the primary residential parent is governed by Tennessee Code Annotated §36-6-101(a)(2)(B), which provides as follows:

> If the issue before the court is a modification of the court's prior decree

pertaining to custody,[1] the petitioner must prove by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failure to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

As the statute makes clear, a trial court has no authority to modify a permanent parenting plan without a showing of a material change of circumstances that makes a change in the child's best interest, based on the factors set forth in Tenn. Code Ann. §36-6-404(b). *Davidson v. Davidson*, 2010 WL 4629470, at *5 (Tenn. Ct. App. Nov. 15, 2010); *see Hansen v. Hansen*, 2009 WL 3230984, at *3 (Tenn. Ct. App. Oct. 7, 2009) (parenting plan cannot be altered on a whim). "Only if a material change of circumstances is shown to exist is the trial court to proceed to the next step of the analysis: whether modification of the existing parenting arrangement is in the child's best interest." *Birdwell v. Harris*, 2007 WL 4523119, at *5 (Tenn. Ct. App. Dec. 20, 2007) (citing *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003) and *Curtis*, 215 S.W.3d at 840).

Appellate courts are reluctant to alter a trial court's determination of what is in a child's best interest. As we explained in *Birdwell v. Harris*:

> Because of the broad discretion given trial courts in matters of child custody, visitation, and related issues, including change in circumstances and best interests, and because of the fact specific nature of such decisions, appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation. Accordingly, this court will decline to disturb a trial court unless that decision is based on the application of incorrect legal principles, is unsupported by a preponderance of the evidence, or is against logic or reasoning.

2007 WL 4523119, at *6 (citing *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999), *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001), *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996), *Eldridge*, 42 S.W.3d at 85, and *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997)).

---

[1] The modification herein was a change in designation of the primary residential parent. Determining the primary residential parent under the current statutory scheme is the equivalent of awarding primary custody under the earlier statute.

**B. Determining the Child's Best Interest**

Father does not contest the trial court's determination that a material change of circumstances had occurred and that the residential schedule directing the child to alternate houses nearly every day was not in the child's best interest. Rather, Father argues the court was barred by the doctrines of *res judicata* and/or collateral estoppel from (1) finding his 2006 petitions for modification were frivolous and/or made without necessary investigation because these petitions were not deemed frivolous when they were heard, and (2) finding that he assaulted Mother's mother on February 26, 2006. Father contends the trial court erred by relying on these findings to determine that it was in the child's best interest to change the primary residential parent from Father to Mother. We do not agree.

**1. *RES JUDICATA* AND COLLATERAL ESTOPPEL**

The doctrine of *res judicata* bars a second suit between the same parties on the same cause of action with respect to issues that were or could have been litigated in the earlier suit. *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009). For the doctrine of *res judicata* to apply, there must be a final judgment on the merits that involved the same cause of action as the current action. *Id.* at 377.

The doctrine of collateral estoppel prevents the same parties from relitigating the same issue in a later proceeding. *Mullins v. State of Tennessee*, 294 S.W.3d 529, 534 (Tenn. 2009). "To prevail with a collateral estoppel claim, the party asserting it must demonstrate (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded." *Id.* at 535 (citing *Gibson v. Trant*, 58 S.W.3d at 118 (Birch, J., concurring and dissenting) (itself citing *Beaty v. McGraw*, 15 S.W.3d 819, 824–25 (Tenn. Ct. App.1998)).

Father's first petition to modify alleged inappropriate touching of the child by one of Mother's male friends, which resulted in an *ex parte* restraining order against Mother that stayed in effect, preventing Mother from seeing her child at all, until the court held a hearing ten days later. Father stated in this petition: "[Father] fears that the minor child of the parties will suffer immediate and irreparable harm if [Mother] is not restrained and enjoined from any further visitation and/or parenting time . . . ." Mother denied any wrongdoing by her friend against her child, and alleged in a cross complaint that Father assaulted her mother while holding their child.

The court dismissed the restraining order "with no finding of wrong doing on the part of [Mother], but with the stipulation by both parties that neither [Father] or [Mother] shall have overnight visitation with third parties other than relatives pending further orders of the Court." The court did not enter a final order at this time with respect to any issue raised in Father's petition, but reinstated its earlier parenting plan. The court's order does not reflect that it considered Mother's allegation of Father's assault on her mother in ruling on Father's petition.

In his second petition to modify Father repeated his earlier allegation of inappropriate touching. Father also alleged Mother was taking illegal drugs. Father stated: "[Father] fears that if the Court does not take appropriate action modifying the prior orders of custody and requiring some supervision in [Mother's] parenting time until such time as she can correct her bad behaviors and adequately prove to this Court that she is no longer making these bad choices in her care of the minor child, that the child will suffer immediate and irreparable harm, if [Mother] is not restrained and enjoined from having any further contact with her or having any other contact that is not supervised pending further orders of this Court."

As with his first petition to modify, Father again sought a restraining order, which the court ordered after holding an *ex parte* hearing. This restraining order prevented Mother from seeing her child unsupervised until the results of the drug tests the court ordered Mother and Father to take came back negative. Mother denied any wrongdoing, denied taking any illegal drugs, and the results of the drug tests showed Mother had not in fact taken any illegal drugs as Father alleged. Following the hearing on Father's second petition, the court found Father did not carry his burden of proof showing Mother had used illegal drugs, and accordingly dismissed the restraining order it had earlier issued *ex parte*. The court reinstated the parenting plan "until further action by this Court."

The main purposes of the *res judicata* and collateral estoppel doctrines are to prevent inconsistent or contradictory judgments, conserve legal resources, and protect litigants from having to defend multiple lawsuits involving the same facts. *Creech*, 281 S.W.3d at 376 (citing *Sweatt v. Tenn. Dep't of Corr.*, 88 S.W.3d 567, 570 (Tenn. Ct. App. 2002). "In the absence of an express direction of the court to the contrary, a judgment that disposes of only some of the claims, issues, or parties is not a final judgment and is subject to revision by the court at any time before the entry of a final judgment adjudicating all claims and the rights and liabilities of all parties." *Creech*, 281 S.W.3d at 377; Tenn. R. Civ. P. 54.02.

Prior to the trial court's order from which Father appealed, Mother did not allege and the court did not find Father's first two petitions were made without necessary investigation. Moreover, the language the court used in its orders dated March 30 and November 2, 2006 makes it clear that the orders were not final orders as they must be for the doctrines of *res*

*judicata* or collateral estoppel to come into play. We therefore conclude the court was not prevented by either *res judicata* or collateral estoppel from finding (1) Father's petitions filed on March 20, 2006 and September 21, 2006 were frivolous and/or made without necessary investigation or (2) Father assaulted Mother's mother on February 26, 2006. We further conclude the court was entitled to rely on these findings to determine whether it was in the child's best interest to change the primary residential parent from Father to Mother.

## 2. EVIDENCE SUPPORTING COURT'S FINDINGS

Next we will consider whether the evidence supported the trial court's finding that Father's three petitions were filed without necessary investigations. In the first petition he filed in March 2006 Father alleged material changes of circumstances warranting Father's being awarded permanent custody of the child. Specifically, Father alleged Mother was living with another man, and that this man touched their child inappropriately. Upon questioning by Mother's lawyer, Father testified as follows:

Q:    Now, in that petition – the second petition – you allege that she lived with a man named Larry?

A:    Did I say she lived with him or that it was her boyfriend?

. . . . .

Q:    Okay, so you did allege in this petition that she did live with a man named Larry?

A:    Yes.

Q:    You didn't have any proof of that?

A:    Not that you would call proof, no, ma'am.

Q:    You didn't investigate that, did you?

A:    I tried, but . . . .

Q:    How did you try; what did you do?

A:    Well, I tried to find out where she was staying at; she was staying at her mother's house then. But I couldn't prove that anybody was staying in that house.

. . . . .

Q:   So you had asked where she was living and she told you she was living with her mother?

A:   Yes, she told me she was living with her mother.  Her mother said she was living with her.

Q:   And her mother corroborated that?

A:   Yes.

Q:   And yet you allege in this petition that she is living with a man named Larry.

A:   Yeah, I thought he stayed there, yes.

. . . . .

Q:   Well, did you ever ask Larry if he was living there?

A:   No, ma'am, I never even talked to the guy.

Q:   And you didn't ask Ms. Payne or Ms. Sexton if he was living there?  You didn't ask them, did you?

A:   No, ma'am.

Q:   So because his truck was there sometimes when you were there, you were willing to swear in a petition that he was living there, that she was living with him, correct?

A:   Well, yes.

Q:   You really didn't adequately investigate that, did you?

A:   I don't guess I did.

With respect to Father's allegation that Mother's friend touched their child inappropriately, Father testified not only that he had no proof of this allegation, but that before filing his petition Father knew that neither the child's pediatrician nor the psychologist who saw her had any reason to believe the child had been molested in any way.

-10-

In the petition he filed in September 2006, Father alleged material changes in circumstances warranted the court's enjoining Mother from further contact with the child unless her contact was supervised. In this second petition Father repeated the allegations he had included in his first petition, about which he had no proof, and he added the allegation that Mother was taking illegal drugs. Upon questioning by Mother's attorney, Father testified that he had not witnessed Mother using drugs, he did not ask Mother whether she was using drugs, he did not ask Mother's mother, where she was living at the time, whether she was using drugs, and he did not ask any of Mother's friends whether she was using drugs before filing this petition.

Father's testimony was unequivocal that he did nothing to investigate whether or not Mother was using drugs before he filed the September 2006 petition seeking Mother's time with the child to be terminated unless she were supervised. As a result of Father's September 2006 petition, however, before the court held a hearing in which Mother was permitted to participate, the court issued a restraining order following an *ex parte* hearing that prevented Mother from seeing her child at all for nearly an entire month.

In the petition he filed in September 2008 Father again alleged material changes in circumstances warranted the court's reducing Mother's parenting time. Once again Father repeated the allegations he had made in his first two petitions, about which he had no more proof than he had when he filed the earlier petitions. However, in this petition Father added a new allegation: that Father was afraid Mother would move their child to a school that was closer to Mother's residence if the court did not reduce Mother's time with the child. Upon questioning by Mother's lawyer, however, Father testified he had not investigated whether Mother had any plans to move the child to a different school:

> Q: Now, you also allege in your complaint that Ms. Payne, on numerous occasions, has told you that she wants [the child] to attend Cumberland County schools?
>
> A: Yes, she did say that.
>
> Q: On how many occasions?
>
> A: I don't know . . . maybe four or five.
>
> Q: Four or five times, she has told you that she wanted [the child] to attend a Cumberland County school?
>
> A: Yes, she did before she ever started going to school.

Q: But you just testified on direct when Ms. Simmons was questioning you, you just testified that she has never tried to enroll her anywhere else?

A: No she has never, no.

Q: Okay, well, your petition also alleges that you fear that she is going to move [the child]?

A: Yes, I thought they might.

Q: Why do you fear that?

A: Well, it would be easier for them. I mean, they live in Cumberland County. It's closer to take her to school and everything.

Q: But why do you fear that they would move her? What reason do you have to "fear" that they would move her?

A: Because I thought that was where they wanted her to go to school.

Q: Well, you knew that that was where they wanted her to go to school, right?

A: Yes.

Q: But they've never tried to change her school, have they?

A: No, not that I know of.

Q: They've never threatened to change her school, have they? Kyndra has never threatened to change [the child's] school, has she?

A: Not directly to me, no.

Q: And as you testified when Ms. Simmons was questioning you, she has cooperated fully with South Fentress; she has not objected when you enrolled her?

A:     Not to me, no, ma'am.

The hearing on Father's third petition was held in August 2009, after the child had attended South Fentress for a full year without any attempt by Mother to change the child's school.

Based on the evidence presented at the hearing in August 2009, we conclude the evidence does not preponderate against the trial court's finding that Father filed each of the three petitions seeking to modify Mother's parenting time without undertaking necessary investigation and that they were frivolous. Therefore, the court was not precluded from relying on these findings in its consideration of the child's best interest in deciding whether to name Mother the primary residential parent.

Both Father and Mother agreed that transporting the child back and forth every day is not in her best interest, especially now that she is of school age.  They agreed that the parenting plan had to be altered in some way to provide more stability in the child's day to day life.  One of the factors trial courts are to consider in determining a child's best interest is the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the child and the other parent.  Tenn. Code Ann. §36-6-404(b)(3).  The trial court was reasonable in concluding Father was not facilitating the child's relationship with Mother by filing petitions to limit her time with the child when Father had no basis for the assertions he made in the petitions.

Accordingly, we conclude the trial court's decision to name Mother the primary residential parent was reasonable and supported by a preponderance of the evidence.

### C.  MOTHER'S ATTORNEY'S FEES

Mother contends the trial court erred by failing to award her the attorney's fees she has incurred defending each of the three petitions to modify her visitation with the child.  She also seeks the attorney's fees she incurred in defending Father's appeal of the trial court's order naming Mother the primary residential parent.  We agree.  Mother is entitled to her attorney's fees pursuant to Tenn. Code Ann. §36-5-103(c), which provides:

> The plaintiff spouse may recover from the defendant spouse . . . reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding

is pending, in the discretion of such court.

This court has recognized that "requiring parents who precipitate custody or support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy." *Hansen v. Hansen*, M2008-02378-COA-R3, 2009 WL 3230984, at *7 (Tenn. Ct. App. July 9, 2009) (quoting *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992)); *see D. v. K.*, 917 S.W.682, 686 (Tenn. Ct. App. 1995) (Mother awarded attorney's fees and expenses after successfully pursuing case for change in visitation necessitated by Father's behavior). Mother's ability to pay her legal expenses is not a prerequisite for awarding her attorney's fees under Tenn. Code Ann. §36-5-103(c). *Sherrod*, 849 S.W.2d at 785.

Awarding Mother attorney's fees is reasonable and equitable in this case. Mother was compelled to defend three petitions Father filed without adequately investigating whether the allegations had any basis in fact. In these petitions, Father was unable to prove even one material change of circumstance supporting his request that Mother's time with their child be reduced. Father agreed before the trial court the parenting plan should be changed, but was unable to prove that the child's best interests required some other plan than the one adopted. Consequently, we conclude that Mother is entitled to an award of attorney's fees in defending these actions at the trial level. Additionally, we award Mother attorney's fees incurred in this appeal.

## IV. CONCLUSION

The trial court's decision regarding the modification of the parenting plan is affirmed. The trial court's denial of Mothers' attorney's fees is reversed. We remand this case to the trial court for the determination of Mother's reasonable attorney's fees at trial and in this appeal and for entry of an order directing Father to pay that amount to Mother. Costs of this appeal shall be taxed to the appellant, Joshua Cordell Payne, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE